Judgment rendered July 6, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,575-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DENISE ANDING O/B/O OF                    Plaintiffs-Appellants
THE MINOR CHILDREN,
MARCUS ANDING, DEAUNTE
BROWN & ALYSSA ANDING

versus

LIEUTENANT SCOTT                          Defendants-Appellees
FERGUSON, DILLARD
DEPARTMENT STORES, INC.,
PECANLAND MALL, LLC, THE
CITY OF MONROE, THE
MONROE POLICE
DEPARTMENT, & XYZ
INSURANCE COMPANY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2020-2497

Honorable Alvin Rue Sharp, Judge

* * * * *

PLEASANT, WILLIAMS &                      Counsel for Appellants
BANKS-MILEY LAW GROUP, LLC
By: Kristen B. Pleasant
    Jessica Welch Williams
    Donecia Banks-Miley

CITY OF MONROE
LEGAL DEPARTMENT
By: Angie D. Sturdivant
    Brandon W. Creekbaum

Counsel for Appellees,
Lieutenant Scott
Ferguson, The City of
Monroe and The Monroe
Police Department

PROVOSTY, SADLER
& deLAUNAY, APC
By: H. Bradford Calvit
    Eli Jules Meaux
    John Dexter Ryland

Counsel for Appellee,
Dillard Department
Stores, Inc.

DAVENPORT, FILES & KELLY, LLP
By:  M. Shane Craighead

Counsel for Appellee,
Pecanland Mall, LLC

\* \* \* \* \*

Before COX, ROBINSON, and MARCOTTE, JJ.

**COX, J.**

This civil suit arises from the Fourth Judicial District Court, Ouachita Parish, Louisiana. Denise Anding ("Anding"), on behalf of Alfonso Brown's ("Brown") children, appeals a judgment that sustained exceptions of prescription and dismissed her wrongful death and survival actions arising from Brown's death. For the reasons expressed, we affirm.

## FACTS

On September 21, 2020, Anding, on behalf of Brown's children, filed a petition for wrongful death and survival action, damages, and declaratory relief against Lieutenant Scott Ferguson ("Lt. Ferguson"), Dillard's Department Store, Inc. ("Dillard's"), Pecanland Mall, LLC ("Pecanland"), Monroe Police Department ("MPD"), and the City of Monroe (the "City") (collectively, "Appellees"), seeking damages for Brown's death and subsequent survival action, as well as declaratory relief concerning the prescription of her claim under 1) La. R.S. 9:5828-9:5830, for hardships regarding Covid-19 and Hurricane Laura; 2) La. C.C. art. 3472; and 3) *contra non valentem.*

In her petition, Anding alleged that on June 17, 2019, Brown went into Dillard's in Pecanland Mall in Monroe, Louisiana. While shopping, Brown spoke with a store employee who asked about the clothes he had and helped him find other clothes to browse. After the interaction, the store employee became suspicious of Brown's behavior and reported him to store security who advised that Lt. Ferguson, who was working as private security for Dillard's, would handle the matter. Lt. Ferguson then came into the area and passed Brown before proceeding to the restroom. The store employee

was concerned that Brown would leave the store without paying and alerted store security, who advised that Lt. Ferguson would handle the matter.

After Brown left the store, Lt. Ferguson followed him into the parking lot and told Brown to stop. Although Lt. Ferguson, during his interview with a Louisiana State Police Investigator, stated that Brown looked back at him and ran, Anding claimed that a witness, Marvin Wink ("Wink"), testified that Brown never ran, but trotted away. Lt. Ferguson stated that because Brown had his right hand in his pocket, he fired his taser, but only one prong hit Brown in the mid-back area; however, Wink testified that Ferguson fired the taser three times.[1] Lt. Ferguson testified that after he attempted to grab Brown, he was pushed off, so he attempted to drive stun Brown. Lt. Ferguson stated that he struggled with Brown in the parking lot until they reached the travel lane closest to the store.

The petition then provides that after Lt. Ferguson gained control over Brown and called for backup, Brown dropped the clothes he obtained from Dillard's, got up, and the two "traveled back to the edge of parking lot area where the cars were parked." Lt. Ferguson then pushed Brown against a car, Brown fell to one knee, and Lt. Ferguson drive stunned Brown's back leg. Anding then alleged that when Brown failed to remove his hand from his pocket, Lt. Ferguson put Brown down on his chest and drive stunned him again. After Lt. Ferguson handcuffed Brown, he asked Wink to gather the clothes Brown dropped, and he noticed that Brown began to breathe heavily and checked his pulse.

_____

[1]Anding notes that the taser report provided that Lt. Ferguson's taser was fired eight times between 11:40 a.m. and 11:42 a.m.

2

When he could not locate a pulse, Lt. Ferguson allegedly stated, "Oh, shit," removed the handcuffs, rolled Brown onto his back, and performed CPR until the other officers arrived on the scene.[2]  Shortly thereafter, Brown was pronounced dead at the scene.  Although the case was brought before a grand jury on October 17, 2019, where no true bill was returned, Anding contends that she and Brown's family were never notified of this information and were repeatedly told that the matter was under investigation.  The petition claimed Lt. Ferguson's use of force in order to detain Brown was unreasonable and excessive.

Specifically, Anding alleged that Lt. Ferguson's use of his taser constituted battery against Brown because his use of the taser was improper and unjustified under the circumstances of this case primarily because Brown was unarmed and, therefore, incapable of inflicting any serious injuries.  Based on this use of force, Anding asserted that Lt. Ferguson was liable for Brown's death and all subsequent damages arising from the incident.  Anding further claimed that because Lt. Ferguson, an MPD officer, worked as private security for Dillard's, the City, MPD, Dillard's, and Pecanland were vicariously liable for his actions.[3]

---

[2] Another witness, Antonio Williams, stated that he went to the mall with Brown and that he and another man, only referred to as Nathan in the petition, were waiting in the car for Brown.  He stated that he saw Brown exit the store with clothes and that he later saw two officers tase Brown in the chest.  Williams reported that when he saw Brown and the officers in the parking lot, he stated, "Y'all ain't gotta do him like that," at which point he was told that he was interfering with an officer.  Williams stated that Brown was still alive and handcuffed on the ground when he drove off.

[3] Anding alleged that the City and MPD were vicariously liable for Lt. Ferguson's action and were independently liable for the negligent hiring, training, and supervising of Lt. Ferguson, as well as the following:
- Refusal to supervise, reprimand, discipline, transfer, monitor, counsel, and/or control law enforcement officers who engage in misconduct, and condoning the use of excessive force;
- Failing to conduct an internal affairs investigation and discipline[e] Lt. Ferguson for using excessive force;

3

In recognizing that the petition was filed beyond the general one-year prescriptive period, Anding asserted four arguments for declaratory relief to render the claim as timely filed. Specifically, she asserted that she was entitled to a suspension of prescription under La. R.S. 9:5828-9:5830 for hardships regarding Covid-19. She further provided that she was also entitled to another suspension of prescription because of Hurricane Laura, which would have suspended her claim for 30 days commencing August 21, 2020.[4] Alternatively, Anding argued that pursuant to La. C.C. art. 3472, she was entitled to an additional three months by which to bring this action.

She also argued that the doctrine of *contra non valentem* rendered the claim timely because she was unaware of the investigative findings and

_____

- Failing to have a specific policy manual regarding the levels of force used for civilians that are suspected of nonviolent crimes and who pose no immediate threat of harm to the officer or the public;
- Failing to provide Lt. Ferguson with a placement body camera; and
- Failing to provide proper medical devices for treatment resulting from the use of tasers, such as defibrillators.

Anding further alleged that Dillard's was vicariously liable for Lt. Ferguson's actions for negligent hiring, training, and supervising of Lt. Ferguson, as well as the following:
- Failing to properly train and supervise security officers on approaching customers, detaining customers, discharging tasers, and de-escalation strategies for suspected shoplifters;
- Refusing to supervise, reprimand, discipline, transfer, monitor, counsel, and/or control security employees who engage in misconduct, and then condoning the use of excessive force;
- Failing to have proper medical devices for treatment resulting from the use of tasers such as defibrillators;
- Failing to have adequate security measures in place; and
- Failing to have outdoor surveillance cameras that have the capability of recording and retaining daily footage in the parking lot.

Finally, Anding alleged that Pecanland owed a duty to Brown to protect him while in the parking lot. She asserted that Pecanland breached its duty of due care to provide adequate security, failing to have security officers patrolling the parking lot, and failing to have outdoor surveillance cameras that have the capability of recording and retaining daily footage in the parking lot.

[4] In brief, the City notes that on August 28, 2020, the Louisiana Supreme Court issued an order suspending prescription for 30 days commencing on August 21, 2020. It notes that this 30-day period would have expired on Sunday, September 20, 2020.

4

additional facts of this case until September 8, 2020. Anding alleged that although the case was presented before a grand jury on October 17, 2019, where no true bill was returned, no one ever provided Brown's family with any information about the investigation despite several attempts to contact MPD and the Louisiana State Police.

The Appellees subsequently filed several exceptions,[5] including peremptory exceptions of prescription, arguing generally that Anding's claim prescribed on the face of the petition because it was filed more than one year after the date of the incident. In opposition, Anding asserted that Lt. Ferguson's use of force to apprehend Brown was considered "a crime of violence," namely, manslaughter and aggravated battery, and under La. C.C.P. art. 3493.10, a two-year prescriptive period applied to the facts of this case. Alternatively, Anding reasserted her previous arguments for suspension of prescription under La. R.S. 9:5828-9:5830 and *contra non valentem*.

On May 13, 2021, a hearing on the exceptions was held, and the trial court rendered written reasons for judgment on July 15, 2021. In addressing the exception of prescription, the trial court found that Anding's claim prescribed. It noted that the incident took place on June 17, 2019, and provided that:

> Under existing state law, [Anding's] causes of action (if any) accurred on that date and any lawsuit to be filed by [Anding] should have been filed no later than 17 June 2020. [Anding's] actual lawsuit was not filed until 21 September 2020 (more than one year as, generally, required by law).

---

[5] Dillard's also independently filed a dilatory exception of vagueness and ambiguity and no right of action.

In addressing Anding's claim that La. R.S. 9:5828-9:5830 gave her additional time to file, the trial court found that neither the legislative allowances concerning Covid-19 nor the Louisiana Supreme Court or the governor's declaration for suspension of legal deadlines concerning Hurricane Laura applied; specifically, it stated:

> The state legislature dealt with Covid-19 and time limitations for filing suits in R.S. 9:5829 and related provisions. Essentially, there, our law making body honored the [g]overnor's extension of prescription through 5 July 2020 and fixed a date by which any suspended claim must be filed. That date was 6 July 2020. This effort worked to produce a "suspension with a deadline" and that "deadline" expired on 6 July 2020—long before Plaintiff filed the instant lawsuit on 21 September 2020. Today, this Court declines the invitation to find that a limited "suspension extension" due to Covid-19 applies to this case. But again, the inquiry does not stop there because Plaintiff asserts that a "*Hurricane Laura order*" works to free Plaintiff from the general time limitations under 3492.
>
> Our state's highest court issued a "Hurricane Laura suspension" — which was legislatively enacted around June of 2020. Our state's [g]overnor declared a state of emergency on or about 21 August 2020 — but by the time the [g]overnor and the La. Supreme Court acted, [Anding's] case had already "prescribed." The actions by the [g]overnor, the legislature, and the state's highest court (in this instance) do not work to "resurrect an already dead case." Once more, this Court declines the invitation to find that a limited "suspension extension" due to *Hurricane Laura* applies to this case.

Finally, the trial court found that Anding's claim was untimely under La. C.C. art. 3472. Specifically, the court provided that the state legislature's extension for "deadlines in legal proceedings" related only to those proceedings which were "ongoing" at the time of the provision's enactment. The trial court also found that *contra non valentem* did not apply to this case.[6]

---

[6] The trial court declined to provide written reasons for the remaining exceptions, namely, the exception of no right of action and exception of vagueness and ambiguity.

Anding now appeals the trial court's ruling in its entirety.

**DISCUSSION**

Generally, the standard of review of a judgment for an exception of prescription depends on whether evidence was introduced during the hearing of the exception. *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-00061 (La. 10/10/21), 333 So. 3d 368; *Wells Fargo Fin. La, Inc. v. Galloway*, 17-0413 (La. App. 4 Cir. 11/15/17), 231 So. 3d 793. If no evidence was presented to support or controvert the exception, the manifest error standard of review does not apply, and the appellate court's role is to determine whether the trial court's ruling was legally correct. *Cook v. Rigby*, 19-1475 (La. App. 1 Cir. 11/25/20), 316 So. 3d 482.

When evidence is introduced during the hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard of review. *Mitchell*, *supra*; *Carter v. Haygood*, 04-0646 (La. 1/19/05), 892 So. 2d 1261. In the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, which are accepted as true. *Johnson v. Littleton* 45,323 (La. App. 2 Cir. 5/19/10), 37 So. 3d 542. Because this particular exception of prescription involves the interpretation of a statute, which is a question of law, we review this matter using the de novo standard of review. *Id*.

*Assignment of Error 1*

Anding argues that although the incident occurred on June 17, 2019, and she did not file suit until September 21, 2020, her claim was timely because Lt. Ferguson's actions are considered a crime of violence, such that her claim was subject to a two-year prescriptive period under La. C.C. art. 3493.10. We disagree and find that because Anding filed a claim for

7

wrongful death and survival action, which are governed by specific prescriptive periods, Anding had one year to timely file suit.

La. C.C. art. 2315.2(B), which governs wrongful death actions, provides, in pertinent part, that claims filed under this article prescribe one year from the death of the deceased. Likewise, La. C.C. art. 2315.1, which governs survival actions, provides that such claims "shall survive for a period of one year from the death of the deceased." Anding has not presented any argument that La. C.C. art. 3493.10 is an exception to, or in any way supersedes the prescriptive periods governing La. C.C. art. 2315.2(B) and La. C.C. art. 2315.1, such that a two-year period of prescription should be invoked.

Accordingly, we find that the trial court did not err in finding that Anding's claim was subject to a one-year prescriptive period.

*Assignment of Error 2*

Next, Anding contends that the trial court erred in finding that her negligence claims prescribed. All parties acknowledge that Anding's negligence claims would generally be subjected to a one-year prescriptive period, but under the Covid-19 statutes, La. R.S. 9:5828-9:5830, prescription for this claim was extended. Anding argues that the ratification of these statutes, specifically the "good cause" provision of La. R.S. 9:5830(B), rendered her claim timely. In contrast, Appellees argue that Anding's claims facially prescribed because she had a one-year prescriptive period from June 17, 2019, when the incident occurred, but Anding did not file until more than one year later on September 21, 2020, superseding the extensions allotted by the Covid-19 statutes.

La. R.S. 9:5828 provides, in pertinent part:

8

A. The legislature finds that the COVID-19 public health emergency created a statewide emergency disrupting and forcing the closure of certain courts and public offices and further resulting in the displacement of courts, offices, clients, and counsel. This Part is enacted for the benefit and protection of the state as a whole and its citizens, and to prevent injustice, inequity, and undue hardship to persons who were prevented by the COVID-19 public health emergency from timely access to courts and offices in the exercise of their legal rights, including the filing of documents and pleadings as authorized or required by law. Therefore, this Part shall be liberally construed to effect its purposes.

La. R.S. 9:5829 provides, in pertinent part:

A. All prescriptions, including liberative, acquisitive, and the prescription of nonuse, abandonment periods, and all peremptive periods shall be subject to a limited suspension or extension during the time period of March 17, 2020, through July 5, 2020; **however, the suspension or extension of these periods shall be limited and shall apply only if these periods would have otherwise expired during the time period of March 17, 2020, through July 5, 2020**. The right to file a pleading or motion to enforce any right, claim, or action which would have expired during the time period of March 17, 2020, through July 5, 2020, shall expire on July 6, 2020. (Emphasis added).

La. R.S. 9:5830 provides, in pertinent part:

A. All deadlines in legal proceedings that were suspended by Proclamation Number JBE 2020-30 and **any extensions thereof** shall be subject to a limited suspension or extension until July 6, 2020; **however, the suspension or extension of these deadlines shall be limited and shall apply only if these deadlines would have otherwise expired during the time period of March 17, 2020, through July 5, 2020.** The right to file a pleading or motion to enforce any deadline in legal proceedings which would have expired during the time period of March 17, 2020, through July 5, 2020, shall expire on July 6, 2020. (Emphasis added).

B. Notwithstanding the provisions of Subsection A of this Section and to the extent that deadlines in legal proceedings were not suspended by Proclamation Number JBE 2020-30 and any extensions thereof if a deadline in a legal proceeding lapsed during the time period March 17, 2020, through July 5, 2020, a party shall have the right to seek an extension or suspension of that deadline by contradictory motion or declaratory judgment. The party seeking the extension shall bear the burden of

9

proving that either the party or his attorney was adversely affected by the Covid-19 public health emergency and, but for the adverse effects of the Covid-19 public health emergency, the legal deadline would have been timely met. For good cause shown, the court shall extend the deadline in the legal proceeding, but in no instance shall the extension be later than September 1, 2020.

We find this argument to be without merit; the statutory language of La. R.S. 9:5828-9:5830 is clear and unambiguous: all deadlines were subject to a limited suspension or extension until July 6, 2020. Therefore, any deadline that would have expired between March 17, 2020, and July 5, 2020, expired on July 6, 2020. Here, the incident occurred on June 17, 2019, and because it would have expired on June 17, 2020, Anding was afforded a filing deadline of July 6, 2020; her claim was not filed until September 21, 2020, therefore, it has facially prescribed.

Anding acknowledges that under La. R.S. 9:5829, her claim, which would have expired on June 17, 2020, was extended to July 6, 2020. However, she contends that under the La. R.S. 9:5830(B), "good cause" provision, she was entitled to a hearing to determine if the deadline for filing should have been extended. We disagree and find that the plain language of these statutes clearly provides that Anding's claim fell under the provisions of La. R.S. 9:5829, which addresses prescription and peremption specifically; therefore, the "good cause" provision of 9:5830 does not apply.

On June 9, 2020, in response to the Covid-19 pandemic, the governor signed Act 162 (the "Act") into law and the legislature passed La. R.S. 9:5828 to ratify and amend the governor's suspension of prescriptive periods, peremptive periods, and other legal deadlines first found in the JBE-2020-30 Proclamation. While 9:5828 ratified and confirmed the governor's order, 9:5829, as titled, amended the governor's suspension of prescriptive

10

and peremptive periods specifically. It created a *limited* suspension of such periods that would have, absent the Covid-19 shutdown, prescribed or preempted from any time between March 17, 2020, to July 5, 2020, and extended the expiration of those dates to July 6, 2020.

Conversely, 9:5830 as titled, applies to "*deadlines in legal proceedings*." This statute applied an equivalent rule under 9:5829 to deadlines in legal proceedings and provided that any legal deadline that would have expired between March 17, 2020, and July 5, 2020, would be subject to a limited suspension. Only then are such persons entitled to a contradictory hearing to seek an extension or suspension of that deadline. In interpreting these statutes, La. C.C. art. 9 and La. R.S. 1:4 provide:

> When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent.

Here, the language of the statute is clear and cannot be interpreted any other way; 9:5830 plainly provides for suspension of *deadlines in legal proceedings*, and 9:5829 provides for suspension of prescriptive and preemptive periods specifically.

Although Anding contends that the "good cause" provision does not specifically exclude liberative prescription, we find that this interpretation would render the language of 9:5830 superfluous. When interpreting a statute, courts should give effect to all parts of a statute and should not reach an interpretation that renders any part superfluous; thus interpreting suspension of liberative prescription to 9:5830 would render the inclusion of that specific period in 9:5829 meaningless. Therefore, we find this argument to be without merit.

11

Anding further contends that La. C. C. art. 3472 and art. 3472.1 give her additional time by which to file her claim; we note that while art. 3472 provides that "[t]he period of suspension is not counted toward accrual of prescription" and "prescription commences to run again upon the termination of the period of suspension," the legislative notes to La. R.S. 9:5828-9:5830 provide that these statutes "shall preempt and supersede. . . any provision of the Civil Code or any other provision of law to the extent that such provision conflicts with the provisions of this Act."  Therefore, art. 3472 does not apply.  *See* Acts 2020, No. 162.

With respect to art. 3472.1, Anding argues that because the article was enacted shortly after La. R.S. 9:5829-9:5830, the legislature, in recognizing the impact of Covid-19, intended for art. 3472.1 to act as an additional means to suspend prescription.  La. C. C. art. 3472.1 provides, in pertinent part:

> A. Notwithstanding any other provisions of the law, in the event the governor declares a state of emergency or disaster pursuant to R.S. 29:721 through 772, the Supreme Court of Louisiana may enter an order or series of orders as deemed necessary and appropriate to suspend all prescriptive and peremptive periods for a period of time not to exceed ninety days.

Although this article was enacted after La. R.S. 9:5829-9:5830, it does not automatically apply to previously enacted legislation addressing suspension of prescription under emergency orders.  Rather, the statute provides that for any event following its ratification, by which the governor declares a state of emergency or disaster, the Louisiana Supreme Court may enter an order to suspend prescription or peremption.  The only order issued pursuant to this article is Proclamation No. 170 JBE 2021, addressing Hurricane Laura.  Our legislature previously enacted legislation addressing suspension of

12

prescription and peremption regarding Covid-19 in La. R.S. 9:5828-9:5830, and it controls in this case; therefore, Anding's claim prescribed on July 6, 2020.

Alternatively, Anding argues that under the doctrine of *contra non valentem*, her claim was timely because she was unaware of the grand jury proceedings regarding this case and because the Covid-19 shutdown prevented her from hiring an attorney.

Our courts recognize four categories of *contra non valentem* that prevent the running of prescription:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Plaquemines Parish Comm. Council v. Delta Dev. Co.*, 502 So. 2d 1034 (La. 1987).

Although Anding does not specify which category of *contra non valentem* applies to her assertion that prescription was suspended because she was unaware of the grand jury proceedings, we address her argument under both the third and fourth categories in the interest of thoroughness. The third category is implicated when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction. *Carter, supra*.

13

After a review of the record, we find that there is no indication that anyone took any action that effectually prevented Anding from learning about the grand jury proceedings. In fact, we note that while the investigation was ongoing, Anding, through her former counsel, requested, and MPD and/or the City provided her with, body camera footage related to this incident. Given that the Appellees complied with her request shortly after the incident, and in the absence of any other evidence suggesting that the Appellees prevented Anding from receiving information about the proceedings, we find that this category does not apply.

Likewise, we find that the fourth category does not apply to this case. The fourth category of *contra non valentem*, commonly referred to as the discovery rule, provides that prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. *Roane v. Jones*, 47,860 (La. App. 2 Cir. 4/10/13), 116 So. 3d 700, *writ denied*, 13-1299 (La. 9/20/13), 123 So. 3d 175). Under the discovery rule, prescription begins to run when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So. 2d 502. A prescriptive period begins to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit, as long as he has constructive knowledge of such facts. *Id.*

The record demonstrates that Anding had the requisite knowledge about Brown's death to trigger the running of prescription as evidenced by her hiring an attorney and requesting body camera footage shortly after the

14

incident occurred. Therefore, we find that this category does not apply and Anding had sufficient information to timely file suit.

Anding also contends that the first category of *contra non valentem* applies to this case. As the Fourth Circuit observed in *Felix v. Safeway Ins. Co*., 15-0701 (La. App. 4 Cir. 12/16/15)183 So. 3d 627, the first category of *contra non valentem* encompasses circumstances in which courts must close following a natural disaster, and thus, it covers "the law of catastrophes: war, flood, hurricane, epidemic, strike, profound illness, etc." *Felix*, *supra*. However, the mere occurrence of a catastrophe "does not suffice to invoke the maxim [*contra non valentem*]: the impossibility of acting must be absolute, for example, because the courts were closed or inaccessible." *Id*. Accordingly, to invoke the first category, a plaintiff must establish not only the occurrence of a catastrophe but also a factual impediment to filing suit. *Id*.

In citing *Cipriano v. Pulitzer*, 07-0010 (La. App. Cir. 5/23/07), 959 So. 2d 558, Anding specifically argues that the Covid-19 shutdown was a legal cause to suspend prescription under the first category because it prevented her from obtaining representation after her former counsel disengaged from the case. We disagree and find that *Cipriano*, *supra*, is distinguishable.

In *Cipriano*, *supra*, the plaintiff was involved in an accident on April 11, 2005, and on August 29, 2005, Hurricane Katrina hit the New Orleans area. On April 12, 2006, the plaintiff filed suit and defendants filed an exception of prescription, which the trial court granted because the suit was filed one day late. On appeal, the plaintiff, in part, argued that under the first category of *contra non valentem*, his suit had not prescribed "because all

15

available courts of jurisdiction were closed due to Hurricane Katrina, [and] he had no legal recourse for those days." The Fourth Circuit found that because all available courts with jurisdiction over plaintiff's cause of action were closed from August 29, 2005, until September 2, 2006, when the Nineteenth Judicial District Court reopened, a legal cause existed to prevent courts from recognizing plaintiff's cause of action.

In contrast, we find that Anding was not impeded from seeking legal recourse and timely filing this suit. The record shows that Anding initially retained counsel, Matthew Hemmer, by at least June 20, 2019, a few days after the incident occurred; however, it is unclear from the record exactly when he disengaged from the case; presumably, he remained over the case until at least July 29, 2019.[7] Jerry Coleman ("Coleman"), Brown's brother, provided in his affidavit, that after Brown's funeral he tried to obtain legal services from Macy Allen, but stated that after a year she stopped taking his calls and never told him why she couldn't represent him. Coleman stated that he then attempted to contact numerous attorneys during the Covid-19 shutdown, but legal offices were closed and he could not get anyone to return his calls.

We cannot conclude that the Covid-19 shutdown was the sole impediment to Anding's inability to retain counsel and file her claim. As previously noted, Anding initially retained counsel shortly after Brown died and thereafter counsel disengaged from the case. Colemen provided that he attempted to hire another attorney sometime in 2019, after Brown's funeral, but was unable to officially hire her or receive information about the case for

_____

[7] This is the date of the last filing by the original counsel in this case as evidenced in the record.

about a year and that it was not until the shutdown that he tried to find another attorney, but was unable to do so. Because Anding struggled to obtain counsel long before the Covid-19 shutdown occurred, this event alone was not the sole impediment to Anding filing suit.

Moreover, while we acknowledge that the Covid-19 shutdown is similar to the devastation following Hurricane Katrina, insofar as both disasters were so devastating that our legislature enacted special statutes to address the issue of prescription, we cannot say that the temporary in-person closures of non-essential businesses prevented Anding from timely filing her claim. Unlike the plaintiff in *Cipriano*, *supra*, who was prevented from filing his claim due to complete court closures for a year following Hurricane Katrina, Anding was not prevented from filing her claim in court during the shutdown. During the Covid-19 shutdown, all non-essential businesses, including law offices and courts, were only temporarily prevented from conducting business in person.

To accommodate this change, courts implemented the use of electronic filing and virtual tools to continue legal proceedings. While this may have impacted the *manner* by which courts and law offices conducted business, it in no way indicates that courts were completely shut down, preventing any access to them. This is evidenced by the enactment of La. R.S. 9:5828-9:5830 which continued the suspension of prescription and peremption for certain claims in order to accommodate litigants during the shutdown. Because Anding still had access to courts, we find that the Covid-19 shutdown was not an absolute impediment to Anding seeking legal

17

recourse and timely filing her case.[8]  Accordingly, we find that Anding's

arguments regarding suspension of prescription under *contra non valentem*

do not have merit.

*Assignment of Error 3*

Finally, Anding argues that the trial court erred in failing to render

judgment as to the exception of no right of action, no cause of action, and

exceptions of vagueness and ambiguity.  Because we find that Anding's

claims are barred by prescription, we decline consideration of these

arguments.

## CONCLUSION

For the reasons expressed, the judgment is affirmed.  Costs of this

appeal are cast against the Appellant.

**AFFIRMED**.

---

[8] In petition, Anding also argued that the 30-day suspension of prescription enacted to address the damage caused by Hurricane Laura also afforded her additional time by which to file her claim.  While we recognize that the Louisiana Supreme Court suspended prescription for 30 days commencing August 21, 2020, until September 20, 2020, we find that the special suspension did not extend Anding's deadline.  Pursuant to La. R.S. 9:5828-5830, the prescriptive period applicable to this case, Anding's claim expired on July 6, 2020, and could not be extended under the later enacted Hurricane Laura order.